# Exhibit "1"

Electronically FILED by Superior Court of California, County of Los Angeles on 08/31/2020 12:49 PM Sherri R. Carter, Executive Officer/Clerk of Court, by D. Williams,Deputy Clerk
Case 2:20-cv-09327-VAP-AGR   Document 1-4   Filed 10/08/20   Page 2 of 12   Page ID #:74
20STCV33139
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Rupert Byrdsong

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ABELARDO MARTINEZ, JR., an individual, | Case No. 20STCV33139 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| COT'N WASH, INC., a Pennsylvania corporation; and DOES 1-10, inclusive, | |
| Defendants. | |

Plaintiff Abelardo Martinez, Jr. ("Plaintiff") alleges the following upon information and belief based upon investigation of counsel, except as to his own acts, which he alleges upon personal knowledge:

**INTRODUCTION**

1. As recently recognized by the Supreme Court of the United States, "The Internet's prevalence and power have changed the dynamics of the national economy." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018) (noting that in 1992, less than 2 percent of Americans had Internet access whereas today that number is about 89 percent). According to 2018 polling data, 89 percent of American adults use the Internet.[1] Indeed, one federal district court has noted that "few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites." *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *9 (S.D.N.Y. Dec. 20. 2017); *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001) ("Computers and Internet access have become virtually indispensable in the modern world of communications and information gathering.").

2. According to recent U.S. Census data, approximately 8 million Americans describe themselves as disabled because they are visually-impaired.[2] Thus, depriving blind persons of equal access to commercial websites on the internet would allow American businesses to treat blind persons as second-class citizens who can be segregated from the rest of American society, which is antithetical to the very purpose that motivated Congress to enact the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* ("ADA"), almost three decades ago, as well as the enactment of California's Unruh Civil Rights Act. "'Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.' ' " *Del-*

---

[1] http://www.pewinternet.org/fact-sheet/internet-broadband/ (last visited July 30, 2018). Indeed, 98 percent of adults between the ages of 18-29 use the Internet, and 97 percent of adults between the ages of 30-49 use the Internet. *Id.*

[2] In 2016, an estimated 7.7 million Americans reported having a visual disability. http://www.disabilitystatistics.org/reports/acs.cfm?statistic=1 (last visited July 30, 2018). The statistics were calculated by the Cornell University Yang Tan Institute using the U.S. Census Bureau's 2016 American Community Survey (ACS) Public Use Microdata Sample (PUMS) data. The estimate is based on a sample of 3,085,278 persons who participated in the 2016 ACS.

*Orden*, 2017 WL 6547902, at *9 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75, 121 S. Ct. 1879 (2001) (quoting 42 U.S.C. § 12101(a)(2))).  "Congress found that 'physical or mental disabilities in no way diminish a person's right to fully participate in *all aspects of society*, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination.'" *Del-Orden*, 2017 WL 6547902, at *9 (quoting 42 U.S.C. § 12101(a)(1)) (emphasis added in *Del-Orden*). "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'" *PGA Tour*, 532 U.S. at 675 (quoting S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.C.C.A.N. 1990, pt. 2, pp. 303, 332).  To remedy these ills, "Congress provided [a] broad mandate" in the ADA to effect the statute's "sweeping purpose." *Id.*  "In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would[:] 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages ***available indiscriminately to other members of the general public***'".  *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (emphasis added) (quoting *Carparts Distrib. Ctr. v. Auto Wholesaler's Ass'n*, 37 F.3d 12, 20 (1st Cir. 1994)).

3. Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA, shall also constitute a violation of the Unruh Civil Rights Act.  A person who visits a business's website with intent to use its services and encounters terms or conditions that exclude the person from full and equal access to its services has standing under the Unruh Act, with no further requirement that the person enter into an agreement or transaction with the business.  *White v. Square, Inc.,* 7 Cal.5th 1019, 2019 WL 3771912, at *7 (Cal. Sup. Ct. Aug. 12, 2019).

4. Plaintiff is a blind individual who requires screen reading software to read website content and access the internet.  At all relevant times, Defendant Cot'n Wash, Inc. ("Defendant") maintained its website, http://www.dropps.com/ (the "Website") in such a way that the Website contained numerous access barriers preventing Plaintiff, and other blind and visually-impaired individuals, from gaining equal access to the Website.  At all relevant times, Defendant's denial of full

and equal access to its Website, and therefore its products and services offered thereby, were a violation of Plaintiff's rights under California's Unruh Civil Rights Act.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action. This Court has personal jurisdiction over Defendant because Defendant has conducted and continues to conduct substantial business in the State of California, and because Defendant's offending Website is available across California.

6. Venue is proper in this Court because Defendant conducts substantial business in this County, and because a substantial portion of the misconduct alleged herein occurred in the County of Los Angeles.

**PARTIES**

7. Plaintiff Abelardo Martinez, Jr. resides in Riverside County, California. Plaintiff is permanently blind and uses screen readers in order to access the internet and read website content. At all relevant times, as detailed above, despite several attempts to use and navigate the Website, Plaintiff was denied the full use and enjoyment of the facilities and services of the Website as a result of accessibility barriers on the Website. At all relevant times, the access barriers on the Website caused a denial of Plaintiff's full and equal access multiple times in the past, and deterred Plaintiff on a regular basis from accessing Defendant's Website.

8. While Plaintiff genuinely wants to avail himself of Defendant's goods and services as offered on Defendant's Website, Plaintiff has a dual motivation: he is also a "tester," which one federal court has defined to be "individuals with disabilities who visit places of public accommodation to determine their compliance with Title III [of the ADA]." *Harty v. Burlington Coat Factory of Penn., L.L.C.*, Civil Action No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011). Indeed, it is widely accepted that "testers" such as Plaintiff advance important public interests and should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Plaintiff has filed multiple lawsuits against various operators of commercial websites under the Unruh Civil Rights Act as part of Plaintiff's advocacy work on behalf of the civil rights of visually-impaired persons. Plaintiff intends to continue to engage in such advocacy work into the

foreseeable future to ensure that Defendant's commercial Website and others are fully and equally enjoyable to and usable by visually-impaired persons, including himself.

9. Plaintiff is informed and believes, and thereon alleges, that Defendant Cot'n Wash, Inc. is a Pennsylvania corporation with its principal place of business located in Philadelphia, Pennsylvania. Plaintiff is informed and believes, and thereon alleges, that Defendant owns, operates and provides to the public the Website. The Website provides access to Defendant's array of products and services, including descriptions of its products, amenities and services, online shop, and many other benefits related to its products and services. The Website is a public accommodation within the definition of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181(7) and is a "business establishment" within the meaning of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.* The Website is a service, privilege, and advantage and accommodation of Defendant's services.

10. At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants (Cot'n Wash, Inc. and DOE Defendants will hereafter collectively be referred to as "Defendant").

11. The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

## FACTS

12. The Internet has become a significant source of information, a portal and tool for conducting business, and a means for doing everyday activities such as shopping, banking, etc. for both the sighted and blind, and/or visually-impaired persons.

13. Blind individuals may access websites by using keyboards in conjunction with screen-reading software that vocalizes visual information on a computer screen. Screen access software provides the only method by which a blind person may independently access the internet. Unless websites are designed to be read by screen reading software, blind persons are unable to fully access websites and the information, products and services, privileges, advantages, and accommodations contained thereon.

14. The international website standards organization, W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established, industry standard guidelines for ensuring websites are accessible to blind and visually-impaired people. These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible. These guidelines recommend several basic components for making websites accessible including, but not limited to, adding invisible alternative text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible, and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.

15. Defendant offers the Website, which provides, as set forth above, a breadth of information concerning its products, online shop, and other amenities and services, privileges, advantages, and accommodations.

16. Based on information and belief, at all relevant times, it was Defendant's policy and practice to deny blind users, including Plaintiff, equal enjoyment of and access to the Website. At all relevant times, due to Defendant's failure and refusal to remove access barriers on the Website, Plaintiff and other blind and visually impaired individuals were denied equal enjoyment of and access to Defendant's services, advantages, privileges, and accommodations offered to the public through the Website.

17. At all relevant times, Defendant denied blind individuals equal enjoyment of and access to the products, online shopping services, other services, privileges, advantages, and accommodations and information made available through the Website by preventing them from freely navigating the

Website. At all relevant times, the Website contained access barriers that prevent free and full use by Plaintiff and other blind persons using screen reading software.

18. At all relevant times, the Website's barriers were pervasive and included, but were not limited to, the following: (1) Missing alternative text which presents a problem because an image without alternative text results in an empty link. Alternative Text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alternative Text be coded with each picture so that a screen reader can speak the Alternative Text where a sighted user sees pictures. Alternative Text does not change the visual presentation, but instead generates a text box that will pop-up when the mouse moves over the picture. The lack of Alternative Text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, at all relevant times, visually-impaired Dropps customers were unable to determine what was on the website, browse the site, and determine whether or not to purchase Defendant's products; (2) Linked image missing alternative text which presents a problem because an image without alternative text results in an empty link. Images that are the only thing within a link must have descriptive alternative text. If an image is within a link that contains no text and that image does not provide alternative text, a screen reader has no content to present to the user regarding the function of the link; (3) Spacer image missing alternative text which presents a problem because a layout spacer image does not have an alt attribute. Spacer images are used to maintain layout. They do not convey content and should be given null/empty alternative text (alt="") so they are not presented to users and are ignored by screen readers; (4) Multiple form labels, which presents a problem because a form control has more than one label associated with it. A form control should have at most one associated label element. If more than one label element is associated to the control, assistive technology may not read the appropriate label; and (5) Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen reader users.

19. At all relevant times, due to the inaccessibility of the Website, blind and otherwise visually impaired customers who use screen readers were hindered from effectively browsing for Defendant's products, amenities and services, privileges, advantages, and accommodations that exist online unlike sighted users. If the Website had been accessible, Plaintiff would have independently

1  and privately investigated Defendant's products, services, privileges, advantages, accommodations,
2  and amenities, as sighted individuals can and do.

3      20.    Despite several attempts to access the Website in recent months, at all relevant times
4  the numerous access barriers contained on the Website denied Plaintiff's full and equal access, and
5  deterred Plaintiff on a regular basis from accessing the Website. Similarly, at all relevant times, based
6  on the numerous access barriers contained on the Website, Plaintiff was deterred from purchasing
7  Defendant's products as Plaintiff would have been able to do by using the Website. Plaintiff continues
8  to attempt to utilize the Website and plans to continue to attempt to utilize the Website in the near
9  future. Plaintiff's dignitary interest as a disabled person has been harmed by Defendant's actions.

## CAUSE OF ACTION

### Violations of the Unruh Civil Rights Act, California Civil Code § 51 *et seq*.

**(By Plaintiff Against All Defendants)**

21.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

22.    California Civil Code § 51 *et seq*. guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever. Defendant is systematically violating the Unruh Civil Rights Act, California Civil Code § 51 *et seq*.

23.    The Website is a "business establishment" within the meaning of the California Civil Code § 51 et seq. Defendant has generated, and does generate, hundreds of thousands of dollars in revenue from the sale of its goods and services in California through the Website. The Website is a service provided by Defendant that, at all relevant times, was inaccessible to patrons who are visually-impaired like Plaintiff. At all relevant times, this inaccessibility denied visually-impaired patrons full and equal access to the facilities and services that Defendant makes available to the non-disabled public. At all relevant times, Defendant violated the Unruh Civil Rights Act by denying visually-impaired customers the services and products provided by the Website.

24.    At all relevant times, Defendant's actions constituted intentional discrimination against Plaintiff on the basis of a disability in violation of the Unruh Civil Rights Act because Defendant

constructed a Website that was inaccessible to Plaintiff, knowingly maintained the Website in this inaccessible form, and failed to take adequate actions to correct these barriers even after being notified of the discrimination that such barriers cause.

25. At all relevant times, Defendant also violated the Unruh Civil Rights Act because the conduct alleged herein likewise constitutes a violation of various provisions of the ADA, 42 U.S.C. § 12101 *et seq.* Section 51(f) of the California Civil Code provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

26. The actions of Defendant were in violation of the Unruh Civil Rights Act and, therefore, Plaintiff is entitled to injunctive relief remedying the discrimination.

27. Plaintiff is also entitled to a preliminary and permanent injunction enjoining Defendant from violating the Unruh Civil Rights Act and requiring Defendant to take the steps necessary to make the Website readily accessible to and usable by visually-impaired individuals.

28. Plaintiff is also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense. Plaintiff is also entitled to reasonable attorneys' fees and costs. However, Plaintiff expressly limits the total amount of recovery, including statutory damages, attorneys' fees and costs, and cost of injunctive relief not to exceed $74,999.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

1. For a judgment that Defendant violated Plaintiff's rights under the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*;

2. For a preliminary and permanent injunction requiring Defendant to take the steps necessary to make the Website, http://www.dropps.com/, readily accessible to and usable by visually-impaired individuals; but Plaintiff hereby expressly limits the injunctive relief to require that Defendant expend no more $20,000 as the cost of injunctive relief;

3. An award of statutory minimum damages of $4,000 per violation pursuant to section 52(a) of the California Civil Code; however, Plaintiff expressly limits the total amount of recovery, including statutory damages, attorneys' fees and costs, and cost of injunctive relief not to exceed $74,999;

4. For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, California Civil Code § 52(a); however, Plaintiff expressly limits the total amount of recovery, including statutory damages, attorneys' fees and costs, and cost of injunctive relief not to exceed $74,999;

5. For pre-judgment interest to the extent permitted by law;

6. For costs of suit; and

7. For such other and further relief as the Court deems just and proper.

Dated: August 31, 2020

PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.

Dated: August 31, 2020

PACIFIC TRIAL ATTORNEYS, APC

By: *[signature]*
Scott. J. Ferrell
Attorneys for Plaintiff